IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                          **CAUSE NO. 1:22-cr-159-LG-RPM-1**

**MONTEZ CAMPBELL**

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**DENYING DEFENDANT'S MOTIONS TO DISMISS**</u>

**BEFORE THE COURT** are two [32] [38] Motions to Dismiss filed by
Defendant, Montez Campbell.  This Defendant is charged by indictment with
knowingly possessing a firearm while an unlawful user of a controlled substance, in
violation of 18 U.S.C. § 922(g)(3).  Defendant has filed [32] [38] Motions to Dismiss
the indictment, arguing that section 922(g)(3) is unconstitutionally vague in
violation of the Due Process clause of the Fifth Amendment and otherwise violates
his right to keep and bear arms under the Second Amendment.  The Court has
conducted a hearing on the matter and after due consideration of the arguments of
counsel, the record, and the applicable law, finds that the Motions should be denied.

DISCUSSION

I.    SECOND AMENDMENT CHALLENGE

1.    **Legal Framework**

First, Defendant argues that this case must be dismissed because § 922(g)(3)
is unconstitutional under the Second Amendment to the United States Constitution.
Hence, to resolve the Motion, the Court must analyze and apply Second
Amendment jurisprudence as articulated by the Supreme Court.  The Amendment

provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court concluded, after textual and historical analysis, that the Second Amendment confers "an individual right to keep and bear arms."  *Id.* at 595.  The Court noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  *Id.* at 626.  Relevant here, the Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Id.*  In a footnote, the Supreme Court classified these traditional restrictions on firearm possession as a non-exhaustive list of "presumptively lawful regulatory measures."  *Id.* at 627 n. 26.  The Supreme Court went on to strike down a law of the District of Columbia which "totally bans handgun possession in the home."  *Id.* at 628.  In doing so, the Supreme Court conducted further historical analysis of handgun restrictions in the United States and found the restriction to be novel in its severity, targeting "the quintessential self-defense weapon."  *Id.* at 629.

In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court incorporated the Second Amendment's guarantees against the States through the Fourteenth Amendment.  In doing so, the Court repeated that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession

of firearms by felons and the mentally ill.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27).

In *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111 (2022), the Supreme Court considered the constitutionality of a New York licensing structure that allowed authorities to deny concealed-carry permits even where an applicant met certain threshold criteria. *Id.* at 2122-25. The Court characterized its earlier decisions as "recogniz[ing] . . . the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Id.* at 2122. In doing so, the Court clarified and explained the methodology to be used in addressing Second Amendment claims. The Court rejected "a 'two-step' framework" involving "means-end scrutiny" in use by various appellate courts and instead clarified that the appropriate methodology centers "on constitutional text and history." *Id.* at 2125-26. Therefore, to answer Second Amendment questions, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. In other words:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)). As to historical inquiry, the Court said that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century," the historical

"inquiry will be fairly straightforward." *Id.* at 2131. In such cases, the existence or absence of relevant historical regulations will be probative of the constitutionality of a modern firearm restriction. *Id.*

On the other hand, some "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. In such cases, "this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* At least two metrics are important in analogical reasoning under the Second Amendment— "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in analogical inquiry." *Id.* (quoting *McDonald*, 561 U.S. at 767) (emphasis in original).

### 2.    Case Law on the Constitutionality of Section 922(g)(3)

Now that the legal standard of Second Amendment challenges has been duly summarized, the Court turns to consider relevant Fifth Circuit precedent on the constitutionality of section 922(g)(3) and the related issue of whether it survives *Bruen*'s abrogation of certain Second Amendment case law.

In a pre-*Heller* case, the Fifth Circuit characterized § 922(g)(3) as a "'limited, narrowly tailored specific exception'" to the Second Amendment right which is "not

inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." *United States v. Patterson*, 431 F.3d 832, 835-36 (5th Cir. 2005) (quoting *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001)).  The Court repeated this holding in *United States v. Roach*, 201 F. App'x 969, 974 (5th Cir. 2006).  After *Heller*, the Fifth Circuit reaffirmed this holding.  *See United States v. May*, 538 F. App'x 465, 466 (5th Cir. 2013) (citing *Patterson*, 431 F.3d at 836); *see also United States v. Moreno*, 811 F. App'x 219, 223 (5th Cir. 2020) (upholding Sentencing Guideline § 2D1.1(b)(1), which "increases a base offense level by two levels 'if a dangerous weapon (including a firearm) was *possessed*' in the course of an offense involving drugs," because "drug traffickers pose a risk to society that is enhanced by their possessing firearms" and the enhancement "harmonizes with historical traditions regarding the Second Amendment") (emphasis in original).

Since *Bruen*, the Fifth Circuit has not yet directly opined on the constitutionality of section 922(g)(3).  However, the Court did provide some guidance in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023).  *Rahimi* considered a challenge to 18 U.S.C. § 922(g)(8), banning the possession of firearms by a person subject to a domestic violence restraining order.  In *Rahimi* the Court stated that "*Bruen* clearly 'fundamentally changed' our analysis of laws that implicate the Second Amendment, . . . rendering our prior precedent obsolete." *Id.* at 450-51 (citations omitted).  The Court went on to perform *Bruen*'s textual and historical inquiry anew

and found that § 922(g)(8) unconstitutionally breaches the Second Amendment right to keep and bear arms.

As this Court noted recently, "[t]here is disagreement as to whether considerable Fifth Circuit precedent regarding the constitutionality of firearms regulations remain binding on the district courts." *United States v. Schnur*, No. 1:23CR65-LG-BWR-1, 2023 WL 4881383, at *3 (S.D. Miss. July 31, 2023).  Notably, some courts, post-*Rahimi*, have found themselves bound to pre-*Bruen* circuit court decisions, absent any intervening Fifth Circuit authority to the contrary.  *See, e.g., United States v. Thompson*, --- F.3d ---, 2023 WL 3159617, at *4 (E.D. La. Apr. 27, 2023) (citing *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) ("Whether an intervening Supreme Court decision merely illuminates or unequivocally overrules is a judgment call.")).

With respect to section 922(g)(3) specifically, one court has found that the Fifth Circuit in *Rahimi* broadly abandoned the whole of its Second Amendment precedent without qualification.  *See, e.g., United States v. Connelly*, --- F. Supp. 3d ---, 2023 WL 2806324, at *3 (W.D. Tex. Apr. 6, 2023) ("*Rahimi* . . . held that *Bruen* rendered the Fifth Circuit's prior Second Amendment precedent obsolete without qualification.").  Thus, *Connelly* extended *Rahimi*'s broad disavowal of Second Amendment precedent to its section 922(g)(3) opinions specifically, such as *May* and *Patterson*, which, in its opinion, fell short of the analysis required by *Bruen*.  *Id.* at *3.  Other courts have found that, because "*Patterson* and *May* did not rely on the means end test that *Bruen* eliminated," these cases still retain precedential value

and may be relied upon to reach a decision. *United States v. Gil*, No. EP-22-CR-773-DB, 2023 WL 4356067, at *7 (W.D. Tex. July 5, 2023).

As the undersigned recently noted, "[a]lthough *Rahimi* briefly touched on the 'obsolescence' of prior precedent, the Court may have referred to fundamental changes in its 'analysis of laws that implicate the Second Amendment,' not prior holdings," and "[t]he Court cannot ignore pre-*Bruen* Fifth Circuit precedent on the constitutionality" of section 922(g)(3) "absent a Fifth Circuit or Supreme Court decision reaching the issue." *See Schnur*, 2023 WL 4881383, at *3 (footnote omitted). "Nevertheless, in view of *Rahimi*'s broad comment that may disavow otherwise applicable Second Amendment precedent, and in an abundance of caution," the Court will proceed to consider the constitutionality of section 922(g)(3) under *Bruen. Id.* at *4.

### 3.      Section 922(g)(3) Under *Bruen*

Section 922(g)(3) provides that "[i]t shall be unlawful for any person . . . (3) who is an unlawful user of or addicted to any controlled substance . . . [to] possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(3). The constitutional integrity of this subsection has been discussed by several district courts in the wake of *Bruen*.

As the parties are aware, the Court considered the constitutionality of section 922(g)(3) in *United States v. Daniels*, 610 F. Supp. 3d 892 (S.D. Miss. 2022). There, the undersigned held "that 18 U.S.C. § 922(g)(3) passes constitutional muster under the legal framework articulated in *Heller* and *Bruen*." *Id.* at 897. The Court

reviewed the above-cited Supreme Court precedent and found, firstly, "that section 922(g)(3) regulates conduct which is facially covered by the plain text of the Second Amendment." *Id.* at 894. However, the Court noted that both *Heller* and *Bruen* leave this an open question due to their repeated references to "law-abiding, responsible citizens" as the indisputable right-holders of the Second Amendment, which casts doubt on whether it facially protects unlawful users of controlled substances. *Id.* (citing *Bruen*, 142 S.Ct. at 2134). Uncertain of this answer, however, the Court proceeded to *Bruen*'s historical analysis and concluded, based on several federal appellate decisions, that § 922(g)(3) fell within *Heller*'s presumptively lawful category of historically attested firearm restrictions. *See United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010) (collecting cases). The Court also concluded, since an historical analysis contained most prominently in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), that section 922(g)(3) was sufficiently analogous to various historically attested disarmament schemes aimed at those considered dangerous or a risk to society. *Daniels*, 610 F. Supp. 3d at 896-97. The Court thereby upheld section 922(g)(3). *Id.* That decision is currently on appeal at the Fifth Circuit.

The jurisprudence has, however, developed since the *Daniels* decision. A few months later, another court found that the conduct prohibited by section 922(g)(3) is not covered by the plain text of the Second Amendment, because *Bruen* apparently reinforced *Heller*'s suggestion that the "people" of the Second Amendment are "ordinary, law-abiding citizens." *See United States v. Sanchez*, --- F. Supp. 3d ---,

8

2022 WL 17815116 (W.D. Tex. Dec. 19, 2022).  Another court upheld section

922(g)(3) based on the historical tradition of firearm regulations, citing pre-*Bruen*

Fifth Circuit precedent and post-*Bruen* district court decisions that already

conducted such an analysis.  *See United States v. Black*, --- F. Supp. 3d ---, 2023 WL

122920 (W.D. La. Jan. 6, 2023).  Post-*Rahimi*, another court upheld section

922(g)(3) due to its relevant similarity to colonial-era statutes disarming those

considered by the populace to be "dangerous."  *See United States v. Gil*, No. EP-22-

CR-773-DB (W.D. Tex. July 5, 2023); *but see United States v. Connelly*, --- F. Supp.

3d ---, 2023 WL 2806324 (W.D. Tex. Apr. 6, 2023) (invalidating section 922(g)(3) as

not relevantly similar or sufficiently analogous to such statutes).  District courts

outside the Fifth Circuit have also upheld the statute under Second Amendment

standards, though controversy persists.[1]

      Here, the Court finds that *Rahimi* may affect the answer to some outstanding

Second Amendment questions noted by *Daniels*—for instance, whether unlawful

drug users are included within "the people" protected by the Second Amendment.

*See Rahimi*, 61 F.4th at 452 (finding that the defendant was part of "the people"

---

[1] *See, e.g., United States v. Beaty*, No. 6:22CR95-PGB-DCI, 2023 WL 4662247 (M.D. Fla. July 20, 2023) (upholding the statute); *United States v. Lewis*, No. 22-0222-WS, 2023 WL 4604563 (S.D. Al. July 17, 2023) (same); *United States v. Posey*, --- F. Supp. 3d ---, 2023 WL 1869095 (N.D. Ind. Feb. 9, 2023) (same); *United States v. Seiwert*, No. 20CR443, 2022 WL 4534605 (N.D. Ill. Sep. 28, 2022) (same); *United States v. Randall*, --- F. Supp. 3d ---, 2023 WL 3171609 (S.D. Iowa Feb. 14, 2023) (same).  For cases to the contrary, *see, e.g., United States v. Alston*, No. 5:23CR21-FL-RN-1, 2023 WL 4758734 (E.D.N.C. July 18, 2023) (recommending a finding that the statute is unconstitutional); *United States v. Harrison*, --- F. Supp. 3d ---, 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023) (finding the statute unconstitutional).

protected by the Second Amendment because he "was not a convicted felon or otherwise subject to another 'longstanding prohibition [ ] on the possession of firearms' that would have excluded him" under the non-law-abiding qualifier).  To the extent that Defendant's criminal status has not been adjudicated, language in *Rahimi* may provide support for his inclusion within the Second Amendment's threshold scope.  *See Gil*, 2023 WL 4356067, at *4.  But this is by no means clear. *See Sanchez*, 2022 WL 17815116, at *3 ("The Court finds that as applied, the language of Section 922(g)(3) limits only persons that are not law-abiding from obtaining firearms and thus does not cover conduct protected by the Second Amendment."); *see also Randall*, 2023 WL 3171609, at *3 ("The key language is 'an unlawful user,' which refers to individuals whose conduct violates the Controlled Substances Act. . . . By virtue of their conduct, many individuals are not law-abiding for the purposes of the Second Amendment.") (citation omitted); *Seiwert*, 2022 WL 4534605, at *2.

Moreover, in the Court's view, *Rahimi* does not significantly affect the historical discussion contained in *Daniels* to the effect that citizens legislatively perceived to be "dangerous" have been disarmed in the American legal tradition. *Daniels*, 610 F. Supp. 3d at 896.  To be sure, *Rahimi* does discuss such colonial-era statutes, which disarmed slaves, Native Americans, disloyal colonists, and the like, but the circuit court distinguishes them from section 922(g)(8) in a way that better holds with respect to section 922(g)(3).  *See Rahimi*, 61 F.4th at 456-57.  For instance, the Court says that "[t]he purpose of the laws disarming 'disloyal' or

'unacceptable' groups was ostensibly the preservation of political and social order, not the protection of an identified person from the threat of 'domestic gun abuse,' . . . posed by another individual." *Id.* (citation omitted).  But, as *Gil* observed, "the disarmament of unlawful drug users and addicts under § 922(g)(3) more closely resembles these historical laws to serve 'the preservation of political and social order' rather than protecting an 'identified person.'" *Gil*, 2023 WL 4356067, at *7; *see also Yancey*, 621 F.3d at 683-84 (finding that section 922(g)(3) addresses "the ease with which any person can anonymously acquire firearms," including "narcotic addicts," which "is a matter of serious national concern") (citing S. Rep. No. 90-1501, at 22 (1968)).

The past and the present are not, and never will be the same and no matter what two moments in history are compared, and contrasted, there will always be differences.  The societal, cultural, political, or technological differences are clear when comparing the colonial era with the present day.  "Dead ringers" will be hard to find, but founding-era historical material does tend to demonstrate the willingness of legislatures to prevent firearms possession by those perceived to be unlawful, dangerous, or a threat to social order.  "[L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness…".  *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023).

## II.   DUE PROCESS VAGUENESS CHALLENGE

Defendant argues that this case must be dismissed pursuant to the Due Process clause of the Fifth Amendment, arguing that the statute is unconstitutionally vague.[2]  There are two species of vagueness challenges—facial challenges and as-applied challenges.  Ordinarily, if a statute does not implicate First Amendment rights, a "vagueness claim must be evaluated as the statute is applied to the facts of th[e] case." *Chapman v. United States*, 500 U.S. 453, 467 (1991) (citing *United States v. Powell*, 423 U.S. 87, 92 (1975)).  In other words, per this doctrine, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 554, 550 (1975).  "We consider whether a statute is vague as applied to the particular facts at issue, for 'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (citation omitted).

The Court does not read the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), to change the above-cited rule.  Rather, the *Johnson* opinion merely "contradict[s] the theory that a vague provision is constitutional

---

[2] According to the Defendant "The Court should dismiss the Indictment because § 922(g)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. The statute fails to give ordinary people fair notice of the conduct it punishes because it does not define the term 'unlawful user.'  Thus, a citizen must guess at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm."  *See* Motion to Dismiss [ECF 38].

merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602.  However, as the Fifth Circuit has noted, "*Johnson* does not change the rule that a defendant whose conduct is clearly prohibited cannot be the one making that challenge." *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *rev'd on other grounds*, 138 S.Ct. 1323 (2018).  Thus, while *Johnson* may clarify the standard for such vagueness challenges, it does not question the above-cited rule.  Indeed, the Fifth Circuit cited many appellate court decisions to that effect.  For instance, in *United States v. Bramer*, the Eighth Circuit held that, under *Johnson*, "Bramer need not prove that § 922(g)(3) is vague in all its applications" to succeed on a facial challenge, but the law "still requires him to show that the statute is vague as applied to his particular conduct" before bringing that facial challenge.  832 F.3d 908, 909 (8th Cir. 2016); *see also United States v. Hasson*, 26 F.4th 610, 620-21 (4th Cir. 2022) (holding similarly).

Based on this precedent, the Court finds that Defendant must succeed on an as-applied vagueness challenge to the statute before he may succeed on a facial challenge regarding the same.  Because such a challenge turns on the factual circumstances of Defendant's conduct, such a Motion is premature at this time and should be denied.  *See Lewis*, 2023 WL 4604563, at *3 ("Because the defendant's vagueness challenges are premature, his motion to dismiss Counts One and Two for vagueness are due to be denied, without prejudice to his ability to reassert those challenges at an appropriate time.").

13

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [32] [38]

Motions to Dismiss filed by Defendant, Montez Campbell, are **DENIED**.

**SO ORDERED AND ADJUDGED** this the 4th day of August, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.

UNITED STATES DISTRICT JUDGE